UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GEORGE BENTON

        Petitioner,

                                    CASE NO. 2:06-CV-11004

    v.                           JUDGE MARIANNE O. BATTANI

                                      MAGISTRATE JUDGE PAUL J. KOMIVES

RAYMOND BOOKER,

        Respondent.[1]

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     C.     *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
     E.     *Prior Consistent Statements (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
     F.     *Sentencing Claims (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
          1.     *Proportionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
               a.  Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
               b.  Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
          2.     *Exceeding the Guidelines* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
          3.     *Inaccurate Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
          4.     *Individualized Sentence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
     G.     *Prosecutorial Misconduct (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
     H.     *Claim IV: Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
          2.     *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
          3.     *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
     I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

_____

    [1]By Order entered this date, Raymond Booker has been substituted for Carol Howes as the proper respondent in this action.

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner George Benton is a state prisoner, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan.

2.     In May 2001, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On May 10, 2001, petitioner was sentenced to a term of 25-50 years' imprisonment for the second-degree murder conviction, and a consecutive two-year term for the felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.     IT WAS REVERSIBLE ERROR IN DEROGATION OF PETITIONER'S DUE PROCESS RIGHT TO A FAIR TRIAL FOR THE TRIAL COURT TO ALLOW THE PROSECUTOR TO INTRODUCE THE STAR PROSECUTION WITNESSES' PRIOR CONSISTENT STATEMENT PURSUANT TO MRE 801(D)(1)(B) WHEN THE WITNESS MADE THE PRIOR STATEMENT AT A TIME WHEN HE HAD A STRONG MOTIVATION TO LIE AND WHERE DEFENSE COUNSEL HAD NOT ALLEGED RECENT FABRICATION.
>
> II.    [PETITIONER] IS ENTITLED TO APPELLATE REVIEW OF HIS SENTENCE FOR SECOND DEGREE MURDER BECAUSE THE 300 TO 600 MONTH TERM OF IMPRISONMENT IMPOSED IN THE CASE AT BAR IS DISPROPORTIONATE TO THE OFFENSE AND THIS OFFENDER AND AN ABUSE OF SENTENCING DISCRETION DESPITE BEING IN ACCORD WITH THE STATUTORY SENTENCING GUIDELINES.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Benton*, No. 236016, 2003 WL 462571 (Mich. Ct. App. Feb. 21, 2003) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Benton*, 469 Mich. 864, 666 N.W.2d 669 (2003).

5. In May 2004, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I. WHERE THE PROSECUTOR DURING CLOSING REBUTTAL REMARKS COMPARED PETITIONER'S DEFENSE AND THEORY TO THAT OF THE O. J. SIMPSON DEFENSE DEPRIVED [PETITIONER] OF DUE PROCESS OF LAW AND THE RIGHT TO A FAIR TRIAL, U.S. CONSTITUTION AMENDMENTS XIV; AND MI CONSTITUTION 1963 ARTICLE 1 SECTIONS 17 AND 20.

II. WHERE TRIAL COUNSEL FAILED TO RENDER OBJECTIVELY REASONABLE REPRESENTATION, PETITIONER HAS BEEN DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY THE U.S. CONSTITUTION AMENDMENTS V, VI; AND MI CONSTITUTION 1963 ART. 1 SECTIONS 17 AND 20, BY COUNSEL'S DEFICIENT PERFORMANCE IN:.

    A. FAILING TO OBJECT DURING CLOSE REBUTTAL WHEN THE PROSECUTOR COMPARED PETITIONER'S DEFENSE AND THEORY TO THAT OF THE O. J. SIMPSON DEFENSE; AND

    B. FAILING TO OBJECT WHEN THE COURT RELIED ON DISMISSED CHARGES TO FASHION PETITIONER'S SENTENCE AT THE VERY HIGH END OF THE MINIMUM GUIDELINE RANGE.

III. WHERE THE APPELLATE COUNSEL FAILED TO RECOGNIZE AND ASSERT SEVERAL MERITORIOUS DUE PROCESS CLAIMS, PETITIONER HAS BEEN DENIED OF THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL BY RIGHT. U.S CONSTITUTION AMENDMENTS VI, XIV; AND MI CONSTITUTION 1963 ARTICLE 1 SECTION 20.

On October 1, 2004, the trial court denied petitioner's motion for relief from judgment based on petitioner's failure to establish good cause for his failure to raise the claims on direct appeal. *See People v. Benton*, No. 00-8026 (Wayne County, Mich., Cir. Ct. Oct. 1, 2004). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Benton*, 474 Mich. 938, 706 N.W.2d 16 (2005); *People v. Benton*, No. 259100 (Mich. Ct. App. June 24, 2005).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 8, 2006. As grounds for the writ of habeas corpus, he raises the following five claims:

I.      IT WAS REVERSIBLE ERROR IN DEROGATION OF PETITIONER'S DUE PROCESS RIGHT TO A FAIR TRIAL FOR THE TRIAL COURT TO ALLOW THE PROSECUTOR TO INTRODUCE STAR PROSECUTION WITNESSES' PRIOR CONSISTENT STATEMENT PURSUANT TO MRE 801(D)(1)(B) WHEN THE WITNESS MADE THE PRIOR STATEMENT AT A TIME WHEN HE HAD A STRONG MOTIVATION TO LIE AND WHERE DEFENSE COUNSEL HAD NOT ALLEGED RECENT FABRICATION.

II.     PETITIONER IS ENTITLED TO APPELLATE REVIEW OF HIS SENTENCE FOR SECOND DEGREE MURDER BECAUSE THE 300 TO 600 MONTH TERM OF IMPRISONMENT IMPOSED IN THE CASE AT BAR IS DISPROPORTIONATE TO THE OFFENSE AND THIS OFFENDER AND AN ABUSE OF SENTENCING DISCRETION DESPITE BEING IN ACCORD WITH THE STATUTORY SENTENCING GUIDELINES.

III.    WHERE THE PROSECUTOR DURING CLOSING REBUTTAL REMARKS COMPARED PETITIONER'S DEFENSE AND THEORY TO THAT OF THE O. J. SIMPSON DEFENSE DEPRIVED PETITIONER OF DUE PROCESS OF LAW AND THE RIGHT TO A FAIR TRIAL UNDER THE U.S. CONSTITUTION AMENDMENTS V, XIV; AND MI CONSTITUTION 1963 ARTICLE 1 SECTIONS 17 AND 20.

IV.     WHERE TRIAL COUNSEL FAILED TO RENDER OBJECTIVELY REASONABLE REPRESENTATION, PETITIONER HAS BEEN DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY U.S. CONSTITUTION AMENDMENTS V, VI, AND MI CONSTITUTION 1963 ARTICLE I, SECTIONS 17 AND 20, BY COUNSEL'S DEFICIENT PERFORMANCE IN:

        A.      FAILING TO OBJECT DURING REBUTTAL WHEN THE PROSECUTOR COMPARED PETITIONER'S DEFENSE AND THEORY TO THAT OF THE O. J. SIMPSON DEFENSE; AND

        B.      FAILING TO OBJECT WHEN THE COURT RELIED ON DISMISSED CHARGES TO FASHION PETITIONER'S SENTENCE AT THE HIGH END OF THE MINIMUM GUIDELINE RANGE.

V.      WHERE APPELLATE COUNSEL FAILED TO RECOGNIZE AND ASSERT SEVERAL MERITORIOUS DUE PROCESS CLAIMS, PETITIONER HAS BEEN DENIED OF THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL BY RIGHT. U.S. CONSTITUTION AMENDMENTS VI, XIV; AND MI CONSTITUTION 1963 ARTICLE 1 SECTION 20.

7.      Respondent filed his answer on September 19, 2006. He argues that the petitioner's

first and second claims are without merit, and that petitioner's remaining claims are procedurally

defaulted and without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

      Petitioner's conviction arises from the January 14, 2000, shooting death of Arthur Pugh in

Detroit. The evidence at trial underlying petitioner's conviction was succinctly summarized by the

petitioner in his brief before the Michigan Court of Appeals.

> Mr. Benton was living at 19953 Hawthorne with Charlesia Garner and Farrah Hill. Mr. Benton told Ms. Garner that Arthur Pugh had given him a counterfeit $20.00 bill. On the date and time in question, Ms. Garner was sitting in her dining room with her cousin's mother, Ms. Hill, along with a male friend of hers, and Mr. Benton. Mr. Pugh called on the phone to speak with Mr. Benton but Mr. Benton would not speak with him. Mr. Pugh came by the house, as he was a family friend of Ms. Garner. Mr. Benton and Mr. Pugh did not speak. When Mr. Pugh left the house Mr. Benton followed him outside. As Mr. Pugh was backing his truck up to leave a car driven by Kumonte Alexander pulled up. Then, Ms. Garner saw Mr. Benton standing between the truck and the car driven by Mr. Alexander and then she saw fire coming from a gun. When asked if she could tell where the flashes were coming from her response was: "It appeared as if it was coming from him [Mr. Benton]." Ms. Garner did not hear two different gun sounds nor did she see any flashes coming out of the truck. She ran with Mr. Benton around the block to his grandmother's house. Ms. Garner has seen Mr. Pugh carry a gun and has seen Mr. Benton carry a gun. Mr. Benton was very drunk when they left for his grandmother's. There were not a lot of people on the street when this happened.
>
> Ms. Farrah Hill testified that she was at her residence on the date and time in question when she heard the gunfire from this incident and described it as: "It was like a lot of shots, but I don't know exactly how many." Ms. Hill then exited her bedroom and walked into the living room and "Maurice was coming in my front door." He was bloody and said he was shot but said nothing else and then she called 911. She saw four wounds in his body.
>
> Brenda Hill, the mother of Farrah Hill, was at her daughter's residence on the date and time in question. Maurice Brown, also known to her as Arthur Pugh, arrived at her daughter's house and spoke with her. Brenda Hill saw Mr. Benton leave the residence first and Mr. Pugh followed him outside. "A short time after that, I heard gunshots and heard my niece screaming." Mr. Benton was angry and drinking when she was talking with him. Mr. Pugh was known to carry a weapon. After the police came she looked outside and saw Mr. Pugh's vehicle "like middle ways on the street on an angle. It wasn't parked."
>
> The first officer to arrive at the scene saw six or eight shell casings in the driveway across the street. He saw the truck "parked on the right-hand side of the roadway," and that was where it was when he arrived at the Hawthorn address.
>
> Kumonte Alexander, a person originally charged in this matter as a co-defendant with the charge of First Degree Premeditated murder and Felony Firearm, took the stand. He testified that he was testifying to what the prosecutor wanted him to so that he could get out of jail soon. He pled guilty to a lessor charge the day before he testified. Mr. Alexander was in the neighborhood dropping off a friend and was going to Mr. Benton's residence to see if he wanted to go to a club. Mr. Alexander parked and got out of his car when Mr. Benton approached him and asked for Mr. Alexander's gun. He gave Mr. Benton his nine millimeter gun and watched

Mr. Benton walk towards the truck and shoot 16-17 shots at a truck that had a man in it. Later, he found out that the man was Mr. Pugh. He saw Mr. Pugh fall out of the passenger side of the truck and get up and go towards the house. At that point, Mr. Alexander drove away. Mr. Alexander admitted to making a statement to the police and the statement was admitted over defense objection.

The evidence technician found 16 casings and a spent bullet on the berm, sidewalk, and street between 19954 and 19940 Hawthorne. These were Winchester nine millimeter casings. The technician could not remember if there were any footsteps in the fresh snow around the truck, and no pictures were taken of the inside of the truck. One casing found among the other casings were "a seven point six two times thirty-nine casing."

The medical examiner testified that Mr. Pugh died of multiple (eight) gunshot wounds. Three bullets were recovered from the body.

The prosecutor rested.

The judge denied the defense motion for a directed verdict on the grounds that the evidence of intoxication was a question of fact for the jury.

The defense presented one witness, an officer from the homicide division. He testified that prior to the police arriving at the scene of this shooting, someone had removed some items from the truck and moved the truck. The officer testified that the seven point six two times thirty-nine spent casing would have been shot by an assault rifle.

The defense rested.

The jury found the defendant [Mr. Benton] guilty of second degree murder and felony firearm. He was sentenced to 300 months to 600 months and 2 years for the gun.

Def.-Appellant's Br. on Appeal, in *People v. Benton*, No. 236016 (Mich. Ct. App.), at Statement of Facts.

## C.    *Procedural Default*

Respondent first contends that petitioner's third through fifth claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional

claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or post-conviction motion; and (3) where the claim could have been raised in a prior appeal or post-conviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See People v. Benton*, 474 Mich. 938, 706 N.W.2d 16 (2005); *People v. Benton*, No. 259100 (Mich. Ct. App. June 24, 2005). Further, the trial court expressly invoked Rule 6.508(D)(3) in rejecting petitioner's motion. These rulings constitute an express invocation of the Rule 6.508(D)(3) procedural bar, thus precluding habeas relief. *See Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000); *cf. Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (*Simpson* rule inapplicable where, unlike here, trial court rejects claims on the merits).

Nevertheless, it is still necessary to consider the claims on the merits. As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate

that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Prior Consistent Statements (Claim I)*

In his first habeas claim, petitioner contends that he was denied his due process right to a fair trial by the introduction of a prosecution witness's prior consistent statement when the statement was made at a time when the witness had a strong motivation to lie and where defense counsel had not yet alleged recent fabrication. The Court should deny petitioner habeas relief on this claim.

1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today we re-emphasize that it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "has no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also, Coleman v.*

*Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right - such as the right to confront witnesses or to present a defense - is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence is "[a]lmost totally unreliable and [t]he fact-finder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 800, 899 (1983).

2.     *Analysis*

As noted above, the issue here is not whether the evidence was properly admitted under the Michigan Rules of Evidence, but rather whether the petitioner was denied a fair trial by the introduction of the evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under MRE 801(d)(1)(B). Here, petitioner cannot show even that the evidence was improperly admitted under state law.

Petitioner first contends that the witness's prior consistent statement was inadmissible because it was not made prior to the time when the supposed motive to falsify arose (i.e., when the witness was arrested, in police custody, and charged with an identical crime). Petitioner argues that the trial court erred when admitting the statement, and thus deprived the petitioner of his due process right to a fair trial. However, the federal courts have repeatedly struck down the argument that motive to fabricate necessarily arises upon the time when a witness is arrested and/or agrees to a plea agreement. *See United States v. LeBlanc*, 612 F.2d 1012, 1017 (6th Cir. 1980) (statements made by defendant's confederate before agreeing to give testimony implicating defendant in bank robberies in return for a release of his brother and other considerations "would be admissible as prior consistent statements which predated the plea bargain agreement."); *United States v. Kahn*, 821 F.2d 90, 94 (2nd Cir. 1987) (court was "unpersuaded that the witness had a motive to lie about defendant's involved involvement in drug deal when he made the prior consistent statement at the time when he was arrested."). Further, statements used to rebut a charge of recent fabrication or motive to lie are admissible where "relevant to rebut an inference of recent fabrication motivated by agreement and therefore admissible where there was no evidence that same motivation to lie [to

FBI] did or could have existed at time of statement and there was no indication that co-defendant had any reason to expect lenient treatment in exchange for implicating defendant at that time." *United States v. Feldman*, 711 F.2d 758, 766-67 n. 16 (7th Cir. 1983); *see also*, *United States v. Wilkinson*, 754 F.2d 1427, 1433 (2nd Cir. 1985) ("the circumstances indicate that the statement was made prior to the time when any motive to falsify arose, i.e, seven months before the filing of the indictment in the present case and long before Burke had entered into any agreement with the U.S. Attorney for the Southern District of New York.").

The record of the trial court (Trial Transcript, Vol. III), clearly shows that the witness, Mr. Kumonte Alexander, made the prior consistent statement implicating the defendant before entering into any plea agreement and without being promised any type of leniency. On redirect examination, Mr. Alexander gave the following testimony to the prosecutor:

.   Q.    Sir, I talked to you this morning before you testified, right?
    A.    Yes.
    Q.    If you remember, what did I tell you about what you're supposed to testify to? Did we talk about that?
    A.    You said tell the truth, what I told the Homicide investigator.
.....
    Q.    I'm going to hand you People's proposed Exhibit 46. Do you see your signature on the bottom of this page?
    A.    Yes, sir.
......
    Q.    When was - when did you give the statement to the police?
    A.    January 27, 2000.
    Q.    So at that time, did anybody tell you that you weren't going to be charged? Did I talk to you or any prosecutor about not being charged?
    A.    No sir.
    Q.    And what you told the police in the statement here, were you telling them the truth?
    A.    Yes I was.

Trial Tr., Vol. III, at 51-53.  The Michigan Court of Appeals also determined that "there was no indication that the witness had been promised anything. There was no indication that he was offered the plea bargain in exchange for the statement. In fact, the statement at issue, preceded the prosecutor's plea bargain offer." *Benton*, 2003 WL 462571 at *1.

Therefore, based on the witness's testimony and the determination by the court of appeals, this Court should conclude that the witness, Mr. Alexander, made the prior consistent statement

-12-

before entering into a plea bargain agreement, and without any expectation of leniency in return for his testimony. Since the statement was made without motive to fabricate, the court of appeals was correct in determining that the trial court did not abuse its discretion in allowing the prior consistent statement to be admitted. *See Perez v. Jones*, No. 01-10379-BC, 2004 WL 192820, at *7 (E.D. Mich. Jan. 26, 2004) (Lawson, J.).

Petitioner also argues that admission of the prior consistent statement was improper because defense counsel never alleged that the witness recently fabricated his testimony. However, it has long been established that "a charge of recent fabrication or improper motive need not be express." *United States v. Hamilton*, 689 F.2d 1262, 1273 n. 20 (6th Cir. 1982). In addition, "the fact that the defense counsel may not have intended to imply that [defendant's] story was fabricated is irrelevant if that inference fairly arises from the line of questioning he pursued." *United States v. Baron*, 602 F.2d 1248, 1253 (7th Cir. 1979); *see also*, *United States v. Lopez*, 584 F.2d 1175 (2nd Cir. 1978) (statements made by a co-conspirator turned government informer implicating the accused were admissible where "the statements were testified to on direct examination."); *United States v. Fearns*, 501 F.2d 486 (7th Cir. 1974) ("the prior consistent statement would have been admissible since the cross-examination of the witness about her plea agreement amounted to an implied charge against her of recent fabrication or improper influence or motive.").

Again, the record shows that the defense counsel made an implied charge of recent fabrication or motivation to lie when cross-examining the witness. Petitioner's counsel asked the witness the following questions on cross-examination:

> Q.  Okay. Let's talk about your testimony today. I know the prosecutor mentioned it briefly, but I want to ask you some questions about it. The reason why you're on that stand right there is because you entered into a deal with the Prosecutor's Office, right?
>
> A.  Yes, sir.
>
> Q.  And before this deal, you would have been sitting right next to my client here charged with first degree murder and felony firearm, right?
>
> A.  That's true.
>
> Q.  Okay. But you negotiated, through your attorney, a deal where you would end up with a benefit where you wouldn't - was no longer being charged with first degree murder, correct?

| | |
|---|---|
| A. | True. |
| Q. | Okay. And you're expecting to get out of jail soon because of the benefit that you're going to get, right? |
| A. | I hope so. |
| Q. | Okay. Now, another thing that goes along with that is not only do you have to take the stand, but you've gotta' testify the way the prosecution wants you to testify? |
| A. | Testify to what I stated on my statement - |
| Q. | Yeah. |
| A. | - to what happened. |
| Q. | Right. You gotta' testify to that, don't you. |
| A. | Yes. |
| Q. | And if they don't like the way you testify, they can take away their offer if you didn't testify the way you were supposed to? |
| A. | No, sir. |
| Q. | You're sure of that? |
| A. | Sure. |
| Q. | But you're hoping that after you testify the way you are - or the way you have, that you'll get a benefit, right? |
| A. | Yes, sir. |

Trial Tr., Vol. III, at 45-46. This questioning at a minimum implies that the witness's trial testimony was fabricated in order to secure a deal from the prosecutor. Thus, the Michigan Court of Appeals reasonably concluded that "[a]t the very least an implied charge that the co-defendant's testimony was improperly motivated or influenced by the plea bargain." *Benton*, 2003 WL 462571, at *1. Accordingly, the Court should deny petitioner habeas relief on this claim.

Further, even if the admission of the witness's prior consistent statement was improper, the admission was harmless in light of the overwhelming evidence of the petitioner's guilt, including evidence corroborating the witness's prior statement - 16 casings and a spent bullet on the sidewalk and the street between 19954 and 19940 Hawthorne; one casing was a seven point six two times thirty-nine casing; testimony of the medical examiner that Mr. Pugh died of eight gunshot wounds; three bullets which were recovered from the body; statements made by Cherlisia Garner that she saw gunfire coming from petitioner's vicinity; statements made by Farrah Hill; and statements made by Brenda Hill. Therefore, petitioner cannot show that even if the statement was not admitted that he would have been acquitted. *See United States v. Hamilton*, 689 F.2d 1262, 1274 (6th Cir. 1983).

F.    *Sentencing Claims (Claim II)*

For petitioner's second claim, petitioner asserts that his sentence of 300-600 months' imprisonment for his convictions of second-degree murder and possession of a firearm during the commission of a felony was improper for four reasons: (1) the sentence was disproportionate to the offense and the offender; (2) the sentence exceeded the sentencing guidelines range; (3) the sentencing judge improperly relied on inaccurate information when considering petitioner's sentence; and (4) the sentence was not individualized. The Court should conclude that petitioner is not entitled to habeas relief based on these four claims.[2]

1.    *Proportionality*

Petitioner first claims that his sentence is disproportionate to the offense and the offender. The Court should conclude that this claim is without merit.

*a. Clearly Established Law*

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence

---

[2] Petitioner also raised a fifth sentencing claim on direct appeal challenging the constitutionality of MICH. COMP. LAWS § 769.34(10) under the Michigan Constitution. To the extent that he asserts his claim here, it does not raise a federal constitutional claim cognizable on habeas review. *See Taylor v. Lecureux,* No. 94-2239, 1995 WL 290271, at *3 (6th Cir. May 11, 1995); *Doyle v. Scott*, 347 F. Supp. 2d 747, 485 (E.D. Mich. 2004) (Gadola, J.)

of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id*. at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id*. at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*. at 1005-06.[3] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus,

---

[3] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.)

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id*. at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Bryer, who were not on the Court when *Harmelin* was decided. *See id*. at 33-35 (opinion of Stevens, J.); *id*. at 36-37 (opinion of Breyer, J.). Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

*b. Analysis*

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relif on this ground. Petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, and sentenced to a term of 25-50 years' imprisonment for the second-degree murder conviction, and a consecutive two-year term for the felony-firearm conviction. Under the circumstances, petitioner's sentence of 25 to 50 years was not grossly disproportionate to his offense. Petitioner was convicted of second degree murder in a case in which he fired into a car, killing the occupant. In these circumstances, a sentence of 20-50 years' imprisonment is not grossly disproportionate to the offense. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009-10 (E.D. Mich. 1999) (Cleland, J.) (life without parole for second-degree murder conviction under MCLA § 750.317 not disproportionate); *Ramos v. Weber*, 303 F.3d 934, 937-38 (8th Cir. 2002) (life imprisonment for first-degree manslaughter); *cf., Lockyer*, 538 U.S. at 73-77 (upholding sentence of 25 years' to life imprisonment for theft under recidivst statute); *Ewing*, 538 U.S. at 28-30 (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.     *Exceeding the Guidelines*

To the extent that petitioner next contends that the trial court erred by exceeding the recommended sentencing range established by the Michigan sentencing guidelines, the Court should conclude that petitioner is not entitled to habeas relief. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).

Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law that is not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Accordingly, petitioner is not entitled to habeas relief on this claim.

3.    *Inaccurate Information*

Petitioner next contends that he was improperly sentenced based on inaccurate information. The Court should conclude that petitioner's claim is without merit. Petitioner's claim relies upon the rule of law established in *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker,* 404 U.S. 443 (1972). In both of these cases, "the Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutz v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally, Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information 'actually served as the basis for the sentence.' *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); see also, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim, petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Johnson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Prior to sentencing, a presentence report identified that petitioner had "[n]o prior felony or

misdemeanor convictions. He ha[d] three prior juvenile adjudications; a car chase and a fleeing and eluding, and an armed robbery for which he was made a ward of the court and placed at Boysville." See PSIR at 4*; see also, Petitioner's Brief On Appeal*. At the sentencing hearing, petitioner's counsel indicated that he "reviewed the presentence report and recommendation with [petitioner], as well as the guidelines. And there are no additions, deletions, or corrections to be made on that report." *Sentencing Tr. at 3*. Further, the trial court discussed the prior adjudications and charges of the petitioner at the sentencing, and the petitioner did not at any time indicate that the report of those convictions and charges were inaccurate. *See id at*. 7-10. The Michigan Court of Appeals rejected petitioner's claim, explaining that petitioner "[had] not established a scoring error, nor [s]hown that his sentence was based on inaccurate information. In fact, during the sentencing hearing,[petitioner] acknowledged that there were no errors in the scoring of the guidelines." *Benton*, 2003 WL 462571 at *2. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, at the sentencing hearing, petitioner's counsel indicated that he had discussed the matter with petitioner, and that petitioner admitted that there were "no additions, deletions, or corrections to be made on that report." Sentencing Tr., 3. Petitioner did not correct counsel, nor did he indicate any error in the report when the trial court directly discussed the convictions with the petitioner. *Id.* "Petitioner's failure to dispute the accuracy of [this information] precludes [him] from maintaining a habeas corpus challenge to its consideration by the sentencing judge." *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *United States v. Kelly*, 687 F.2d 1217, 1221 (8th Cir. 1982) (per curiam) ("When the sentencing court has afforded the defendant full opportunity to point out any factual errors in the presentence report, and he fails to do so, the court does not deny the defendant due process in imposing sentence.").

Second, petitioner has not shown that the trial court relied on any materially false facts in imposing the sentence. In petitioner's Brief In Support Of His Motion For Relief In Judgment*, at* 17-18, petitioner indicated that the trial court was "under the mistaken belief that Mr. Benton had previously been convicted of carrying a concealed weapon, possession of a stolen vehicle, armed

robbery, and drug charges; all of which were either dismissed or resulted in Mr. Benton being not charged with those offenses." However, petitioner also admits: "[Petitioner] has three prior juvenile adjudications, a car chase, and a fleeing and eluding, and an armed robbery for which he was made a ward of the court and placed at Boysville.(See PSIR at 4)." Petitioner's Brief On Appeal, at 18. While the trial court did discuss petitioner's prior convictions in imposing the sentence, it is clear that the court's sentence was based not on the facts of these convictions themselves, but on the underlying conduct reflected in the convictions. After discussing the convictions listed in the Michigan report, the court explained its basis for the sentence imposed.

> The Court has reviewed this presentence report and the accompanying sentence guidelines. And you represent the failure. You represent the worse possible thing that could happen in our system. You've been in trouble as a juvenile. And our society has spent all these resources trying to correct you. I mean, trying to prevent something like this from happening, because you've done the worst thing that anybody can do and that's take somebody's life. And yet as a juvenile, you were getting in trouble. I looked at this. A kid with a gun. You were a juvenile. You carried a gun. Trying to correct you back then. Spent all this money and time. The whole system is trying to get you back on the right track. You were a wardship of the court. The system has done everything to try to stop this. To try to rehabilitate you before somebody gets killed. And what did you do? You killed somebody over some foolishness. You left a man with – You said three babies?
> ....
> I hope you can redeem yourself some kind of way, because you certainly have gone from bad to worse. Having a gun when you were 13 years old. Somewhere around in there. Just a kid with a gun, and look what happens. This says 1994, carrying a concealed weapon. Minor in possession of a firearm, 1994.
> And then now, a minor – a young man killed somebody using a firearm.
>> Possession of stolen vehicle in 1996.
>> Armed robbery, 1996.
>> Drugs, 1999.
> ....
> So I hope that you try to do something good for yourself and for the community, for this family. Make up for what you did. You'll still be a young man.

Sentencing Tr., 7-10. Even if the allegedly dismissed convictions had not been listed on the report, the same factors which lead the court to impose the sentence that it did would have existed, namely, petitioner's history of gun violence and robbery. Further, although petitioner contends that the five remaining charges were dismissed as a result of the plea bargain, he does not allege that the conduct underlying those charges did not, in fact, occur. As the Supreme Court has explained, traditionally "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have

also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747 (1994). Thus, the fact that the charges may have been dismissed pursuant to a plea agreement, "is not significant considering that the judge could properly consider the criminality of the underlying actions regardless of the final disposition of the cases." *Stewart*, 878 F. Supp. at 1144. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

4. *Individualized Sentence*

Petitioner lastly contends that he did not receive an individualized sentence. Although the Supreme Court has held that individualized sentencing is required in the death penalty context, *see, e.g., Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), these cases "have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citing *Eddings v. Oklahoma*, 455 U.S. 104, 110-112 (1982); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *Lockett v. Ohio*, 438 U.S. 586, 602-05 (1978); *Woodson*, 428 U.S. at 303-05). Based on these cases, the *Harmelin* Court explicitly declined to extend the individualized sentencing requirement to non-capital cases. *Harmelin*, 501 U.S. at 996 ("We have drawn the line or required individualized sentencing at capital cases, and see no basis for extending it further."); *see also, id.* at 1006 (Kennedy, J., concurring). Accordingly, petitioner's individualized sentencing claim does not raise an issue of federal constitutional law cognizable on habeas review.

G. *Prosecutorial Misconduct (Claim III)*

Petitioner next contends that he was denied a fair trial by comments made by the prosecutor during the prosecutor's rebuttal closing arguments. Petitioner claims that the prosecutor inappropriately compared the defense counsel's defense theory to that of the O. J. Simpson defense.

1. *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough

that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (Internal quotation omitted). "[T]he touchstone of due process analysis. . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 177 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted). The Court should conclude that petitioner has failed to meet this high threshold in this case.

2. *Analysis*

Petitioner claims that the prosecutor committed misconduct by suggesting similarities between the O. J. Simpson defense and theory and Mr. Benton's defense and theory when the prosecutor was making closing remarks. The Court should reject petitioner's claim on this issue. The record clearly shows that it was the defense counsel who initially implied the similarities between the O. J. Simpson trial and Mr. Benton's case. The defense counsel stated in his closing argument:

> That's why it's difficult, almost impossible to fit all of this together. And I believe the Judge will instruct you that if it doesn't fit - well, I'm not going to use that - use that phrase that somebody else used. But if it doesn't fit, then there's proof beyond a reasonable doubt issue that you've got to deal with. And as to murder in the first degree, you must acquit.

Jury Trial, Tr., dated 4/11/01, at 40. The prosecutor then countered in his rebuttal closing remarks:

> Now, could the evidence test - tech have made a mistake? If it was convenient for the defense, they'll tell you, of course, he made a mistake. It's police work. Remember the O. J. defense? I loved it when [defense counsel] said it doesn't fit, and then he stopped. I have written here, the O. J. defense. If nothing fits in their defense, if nothing fits, they use the O. J. defense. What's the O. J. defense? We prosecutors call it the O. J. defense. It's let's start accusing the police. The

contamination. Let's look for evidence somewhere. And the police happen to be human beings.

*Id.* at 45-46. Defense counsel never objected to prosecutor's counter argument. *See id.*

The Court should conclude that petitioner was not denied a fair trial by these comments. The record shows that the prosecutor was merely responding to an argument made by defense counsel that the conduct of the police enforcement during their investigation of Mr. Benton was inadequate. As the United States Supreme Court has noted, one factor in evaluating claims of prosecutorial misconduct is whether the prosecutor's statement was "invited by or was responsive to the [closing arguments] of the defense." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986). In addition, the Sixth Circuit has stated that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992). Thus, the prosecutor's comments that the jury should ignore counsel's statement that the jury must "acquit....if it doesn't fit" did not deprive petitioner of a fair trial in light of the strong evidence of petitioner's guilt and the testimony of the prosecution's witnesses. See *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim. *Cf. Abney v. Vaughn*, No. 03-66, 2003 WL 22436282, at *15 (E.D. Pa. Oct. 24, 2003) (no denial of fair trial by prosecutor's indirect reference to the O.J. Simpson defense).

H.    *Claim IV: Ineffective Assistance of Counsel*

Petitioner raises two sets of ineffective assistance of counsel claims. First, petitioner contends that his trial counsel rendered constitutionally ineffective assistance by failing to: (1) object when the prosecutor during closing remarks compared petitioner's defense and theory to that of the O. J. Simpson defense; (2) object when the court relied on dismissed charges to fashion petitioner's sentence, and; (3) properly object to the trial court's admission of a prior consistent statement.

Second, petitioner contends that his appellate counsel rendered constitutionally ineffective assistance by failing to recognize and assert several meritorious due process claims. The Court should deny petitioner habeas relief on all of these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *See id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim. . .to address both components of the inquiry if the defendant makes an insufficient showing of one." *Id.* at 697. If "it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice,. . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the fact-finder would have had a reasonable doubt respecting guilt." *Id*, at 695.

2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to object to the prosecutor's O.J. Simpson reference, failing to object to the trial court's reliance on his criminal history in

imposing sentence, and failing to object to the introduction of a prior consistent statement. As explained in the proceeding sections of this Report, however, there was no error with respect to any of these issues, and thus any objection would have been meritless. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

      3.    *Appellate Counsel*

Petitioner also claims that his appellate counsel was ineffective for failing to raise his prosecutorial misconduct and ineffective assistance of trial counsel claims on direct appeal. In order to demonstrate that appellate counsel was ineffective, the petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d. 1174, 1180 (7th Cir. 1996). As discussed in this section and the previous sections, petitioner's ineffective assistance and prosecutorial misconduct claims are without merit. Thus, the Court should conclude that petitioner is not entitled to relief on this claim.

I.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. See *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation. See *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:5/12/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on May 12, 2008.

s/Eddrey Butts
Case Manager